IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDWIN MIRANDA-SÁNCHEZ,

Plaintiff

v.                                                                CIVIL 06-1632 (ADC)

COMMISSIONER OF SOCIAL SECURITY,

Defendant

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On June 26, 2006, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied his application for a period of disability and Social Security disability insurance benefits. The defendant filed a memorandum in support of the final decision on October 2, 2006 (Docket No. 8) and plaintiff filed a memorandum against such final decision on January 4, 2007. (Docket No. 12.)

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole. In order to be entitled to such benefits, plaintiff must establish that he was disabled under the Act at any time on or before March 7, 2006, the date of the final decision. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

After evaluating the evidence of record, Administrative Law Judge Gilbert Rodríguez entered the following findings on March 7, 2006:

CIVIL 06-1632 (ADC)                           2

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's affective disorders is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 404.1520(c)).

4. This medically determinable impairments does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, [and] Regulation No. 4.

5. I find the claimant's allegations regarding his limitations are not totally credible, as they are not supported by objective medical evidence of record.

6. I find that the claimant retains the residual functional capacity to perform the full range from sedentary through heavy work. However, his emotional condition limits him to perform simple, routine, repetitive tasks. His emotional overlay has imposed moderate restriction in his activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration.

7. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).

9. The claimant has "a limited education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

CIVIL 06-1632 (ADC)                              3

11. The claimant has no exertional limitations (20 CFR § 404.1545).

12. Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with his age, education, and work experience, and using Section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled. In spite of his mental impairment and limitations, the claimant can still perform works which are of a routine, repetitive, and simple nature, such as router, escort, and stenciler which are unskilled in nature and exist in significant numbers in the national economy.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

Tr. at 20-21.

Plaintiff has the burden of proving that he has become disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 138 (1987). A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months. See 42 U.S.C. § 416(i)(1). In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits. There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986).

CIVIL 06-1632 (ADC)                              4

Partial disability does not qualify a claimant for benefits.  See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

The administrative law judge ended the sequential inquiry at step five.  At this level, it has already been determined that the claimant cannot perform any work he has performed in the past due to a severe impairment or combination of impairments.  The inquiry requires a consideration of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work.  If the claimant cannot, a finding of disability will follow.  See 20 C.F.R. § 404.1520(f).  At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy given the above factors.  See Lancellotta v. Sec'y of Health & Human Servs., 806 F.2d 284, 284 (1st Cir. 1986); Vázquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982).

At the administrative hearing held on January 18, 2006, before Administrative Law Judge Gilbert Rodríguez, plaintiff was represented by counsel.  It appears from the record that while plaintiff appeared at the hearing, she agreed to submit the matter on the exhibits.  (Tr. at 141-42.)

A case development sheet by an examiner reflects that plaintiff can perform the following unskilled work with no restrictions:  router, escort, and stenciler, which are available in significant numbers in the national economy.  (Tr. at 94.) Plaintiff takes Zyprexa, Wellbutrin and Xanax on a daily basis, the latter twice a

CIVIL 06-1632 (ADC)                       5

day. (Tr. at 96.) A psychiatric evaluation by Dr. Indra Febles Gordían dated October 2, 2003, resulted in a diagnosis of R/O Anxiety Disorder Not Otherwise Specified. (Tr. at 99.) The psychiatrist noted that plaintiff's facial expressions were of anxiety. Speech was not spontaneous. He was relevant and coherent. Behavior was fearful and tense. There was no flight of ideas. Recent and remote memory were conserved. Intellectual capacity seemed average. His capacity to judge his present reality and anticipate the consequences of his acts is in part compromised. Another psychiatric evaluation performed by treating psychiatrist Dr. Roberto Coira on May 21, 2004, resulted in a diagnosis of Bipolar Disorder I Mixed. (Tr. at 102.) Plaintiff visited his treating physician on a monthly basis from August 2002 to May 2004. (Tr. at 100.) The doctor had previously diagnosed Bipolar Disorder I. (Tr. at 106.) Dr. Coira noted a poor prognosis because plaintiff's condition had not improved, and he continued to deteriorate, with worsening of symptoms. The doctor concluded that plaintiff remained unable to deal with the kind of stress generated at a job site. (Tr. at 103.) A mental residual functional capacity assessment by clinical psychologist Hilario de la Iglesia made on November 13, 2003, reflected some moderate limitations in understanding and memory, sustained concentration and persistence, and adaptation. (Tr. at 110-13.) A psychiatric review technique form of the same date shows an affective disorder reflected by disturbance of mood, accompanied by appetite disturbance with change in weight, or difficulty concentrating or thinking. (Tr. at 114-27.)

CIVIL 06-1632 (ADC)                6

The report related anxiety and irritability as pertinent symptoms. (Tr. at 117.) There were moderate functional limitations. Dr. Coira also made a detailed psychiatric medical report and mental residual functional capacity assessment on September 20, 2005 which showed for the most part marked functional limitations in understanding and memory and sustained concentration and persistence, and no marked limitations in social interaction. (Tr. at 136-38.) There was a very poor prognosis.

Plaintiff argues in his memorandum of law that the incorrect legal standard was applied by the administrative law judge and that the state agency medical consultants gave no reasons for their opinions, opinions which were relied upon by the administrative law judge. Plaintiff argues that the residual capacity assessment by the administrative law judge lacked subsidiary foundation. Plaintiff argues that when the Grid is used as a framework for decision-making, and the reduction of the occupational base is more than marginal, the testimony of a vocational expert is required. See Burgos López v. Sec'y of Health & Human Servs., 747 F.2d 37, 42 (1st Cir. 1984).

The administrative law judge used the Medical Vocational Guidelines (Grid) as a framework for decision-making since he found that plaintiff could perform all of the exertional demands of work at a given level of exertion and has non-exertional limitations. (Tr. at 19-20.)

CIVIL 06-1632 (ADC)                              7

In relation to plaintiff's residual functional capacity, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines, known as the Grid, is appropriate. Even where a nonexertional impairment is significant, the Grid may still be used, as it was here, as "a framework for consideration of how much the individual's work capability is further diminished." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1997); Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

> If the applicant's limitations are exclusively exertional, then the Commissioner can meet [the] burden through the use of a chart contained in the Social Security regulations. 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983). "The Grid," as it is known, consists of a matrix of the applicant's exertional capacity, age, education, and work experience. If the facts of the applicant's situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. However, if the applicant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. at § 200(e))[,] that restrict [her] ability to perform jobs [she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision." 20 C.F.R. § 416.969a(d) (2001).

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). In particular, the administrative law judge relied on 20 C.F.R. pt. 404, subpt. P, app. 2, § 204.00[1] since there were

---

[1] Section 204.00- Maximum sustained work capability limited to heavy work (or very heavy work) as a result of severe medically determinable impairment(s).

CIVIL 06-1632 (ADC)                                    8

no exertional limitations. The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of limitations. See 20 C.F.R. § 200.00(e)(1). In using the Grid as a framework for decision-making, the administrative law judge failed to give controlling weight to Dr. Coira's statements and conclusions. Of course, it is well settled that even the opinions of treating physicians are not entitled to greater weight merely because they are treating physicians. Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Pérez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1, 2 (1st Cir. 1980); Rosado-Lebrón v. Comm'r of Soc. Sec., 193 F. Supp. 2d 415, 417 (D.P.R. 2002). The administrative law judge is not required to give such opinions controlling weight. See 20 C.F.R. § 404.1527(d); cf. Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221 (D.P.R. 2003). In this circuit, "'[w]hen a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of "controlling weight" does not apply.'" Berríos Vélez v. Barnhart, 402 F. Supp. 2d 386, 392 (D.P.R. 2005) (quoting Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037 (Table), No. 93-2173, 1994 WL 2510000, at *3 (1st Cir. 1994)). Generally, more weight is given to opinions from treating sources, if such opinions on the issues of the nature and

---

The residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels.

CIVIL 06-1632 (ADC)                                9

severity of the impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  See 20 C.F.R. §404.1527(d)(2).  Plaintiff makes a point in noting that the administrative law judge as a lay person cannot translate raw medical data into functional terms.  In this case, there is a mental residual functional capacity assessment by a non-treating physician regarding plaintiff's mental condition, as well as a psychiatric review technique form which is of little use since it contains no reasoning for its conclusions.  (Tr. at 110-14.)  The Grid was incorrectly used as a framework for decision-making precisely because the medical evidence regarding the mental condition was not so insignificant as to allow for use of the Grid even as a framework.  Plaintiff's medications do not reflect conservative treatment.  (Tr. at 140, 160.)  His condition reflects deterioration over time as shown in Dr. Coira's report, information which is uncontradicted in the record.  There is simply no expert evidence in this record which can assist the administrative law judge in translating raw data concerning plaintiff's mental condition into functional terms up to the end of the covered period.  See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996).  The administrative law judge found persuasive the medical opinions and assessments made by the state agency consultants who reviewed plaintiff's claim and found them supported by the evidence of record as a whole.  (Tr. at 18); see Ex. 3-F, Tr. at 108-27.)  An examiner commented on October 30, 2003 that plaintiff's mood

CIVIL 06-1632 (ADC)                              10

was anxious, short term and immediate memory were diminished, and he had partial insight. The diagnosis was anxiety disorder. (Tr. at 109.) Both the mental residual functional capacity assessment and psychiatric review technique form have little or no explanation of how the limitations are determined.  The clinical psychologist did note that plaintiff is able to understand simple but not complex instructions, can concentrate for two hours, make simple decisions, and relate with people in general.  (Tr. at 112.)

While the rationale of the administrative law judge is thorough, I believe that the record requires vocational testimony from at least a non-examining physician in order to aid the administrative law judge to translate raw data into functional terms, and thus comply with the requirements of the substantial evidence rule.  I explain.

In general terms, a claimant has the burden of proving disability except where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her past relevant work. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a).  Then it is clear that the burden of proof switches to the Commissioner to prove the existence in the national economy of jobs in significant numbers that plaintiff could perform.  The Commissioner can at times meet this burden relying on the Grid.  In this case, however, there are no exertional limitations and thus the Commissioner cannot rely on the rules of the

CIVIL 06-1632 (ADC)                             11

Grid to make a determination.[2]  Again, the Commissioner used the Grid as a framework for decision-making.  In this case, however, I believe that the administrative law judge erred in so doing, since the nonexertional limitations are so significant.  Considerations of substantial evidence are not satisfied when the Commissioner has the burden of proof at step five, that jobs exist in the national economy which plaintiff can perform and the administrative law judge determines that those jobs are router (DOT No. 222.587-038), escort (DOT No. 353.667-010) and stenciler (DOT No. 920.687-178), this based on the only evidence of record which backs such a conclusion, a supplemental statement by a state agency examiner which reaches the same conclusion.  (Tr. at 94.)  This reliance on the only information of record which mentions those jobs is not enough to satisfied the requirements of the substantial evidence rule.  This document leaves one to ponder how the examiner himself translated the raw data concerning plaintiff's mental condition into functional terms.  Dated March 4, 2004, it is the only information, not substantial evidence, which allows the administrative law judge to conclude that plaintiff can work as a stenciler, escort, or router. (Tr. at 94.)  The clinical psychologist's mental residual functional capacity assessment was dated November,

---

[2]In the evaluation of disability where the individual has solely a nonexertional type of impairment, determination as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in this Appendix 2. The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonextertional types of impairments.  20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(1).

CIVIL 06-1632 (ADC) 12

2003. Dr. Coira's last report, reflecting a longitudinal consideration of plaintiff's condition, is dated September 20, 2005, and plaintiff meets the requirements of insured status at least until the date of the final decision in 2006. Clearly plaintiff has suffered a deterioration, a severe erosion in his occupational base, not timely considered and addressed by non-treating sources. If a non-strength impairment has the effect of reducing the occupational base more than marginally, the greater the need for vocational evidence as such occupational base is reduced by the nonexertional impairment. See Ortiz v. Sec'y of Health & Human Servs., 890 F.2d at 524-25.

I believe that there is good cause to remand, and recommend that the final decision of the Commissioner, comprehensive as it may be, be vacated and the case be remanded to the Commissioner for the taking of vocational testimony regarding plaintiff's residual functional capacity assessment.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun.

CIVIL 06-1632 (ADC)                    13

Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 24th day of April, 2007.

                                             S/ JUSTO ARENAS
                            Chief United States Magistrate Judge